Mariana **GEORGESCU** and Traian **Georgescu, Plaintiffs–Respondents,**

v.

K MART CORPORATION, **Defendant–Appellant.**

No. 73416.

Supreme Court of Missouri, En Banc.

July 23, 1991.

Donald R. Duncan, Michael J. Patton, Rodney E. Loomer, Springfield, for defendant-appellant.

Thomas Strong, Steve Garner, Jeffrey W. Bates, Springfield, for plaintiffs-respondents.

HIGGINS, Senior Judge.

Plaintiffs sued K Mart Corporation to recover for injuries resulting from Mariana Georgescu's fall at one of K Mart's stores in Springfield. She suffered a miscarriage and other permanent injuries, including sterility. Her husband, Traian Georgescu, sued for loss of consortium. The jury returned a verdict in favor of plaintiffs, assessed Mariana's damages at $520,000, assessed Traian's damages at $5,000, and found K Mart to be 80% at fault and Mariana to be 20% at fault. Judgment was entered accordingly. The Court of Appeals, Southern District, reversed the judgment and this Court transferred the case to give further review to K Mart's sole contention that plaintiffs failed to make a submissible case. The judgment is affirmed.

Upon review of this question the Court accepts as true the evidence and reasonable inferences therefrom in a light most favorable to the prevailing party and disregards contradictory evidence. *Community Title v. Roosevelt Federal S & L,* 796 S.W.2d 369, 371 (Mo. banc 1990); *Cope v. Thompson,* 534 S.W.2d 641, 644 (Mo.App.1976). The jury is the sole judge of the credibility of the witnesses and the weight and value of their testimony and may believe or disbelieve any portion of that testimony. *Lewis v. Envirotech Corp.,* 674 S.W.2d 105, 111 (Mo.App.1984).

The plaintiffs' verdict-directing instruction, patterned upon MAI 22.03, authorized recovery upon the following findings:

first, there was food on the floor of defendant's store and as a result the floor was not reasonably safe; and

second, defendant knew or by using ordinary care should have known of this condition; and

third, defendant failed to use ordinary care to remove it or warn of it or barricade it; and

fourth, such failure directly caused or directly contributed to cause damage to plaintiff Mariana Georgescu.

## I.

K Mart argues the evidence and reasonable inferences did not support the

submission of the issue of causation to the jury. K Mart asserts there were no witnesses to the fall, Mariana did not know what caused the fall, and none of the evidence established what was on the floor that caused the fall. Direct testimony from the plaintiff or an eyewitness to the fall describing what caused Mariana to slip is not indispensable; a submissible case on the issue of causation can be made on circumstantial evidence. *See, e.g., Scheele v. American Bakeries Co.*, 427 S.W.2d 361 (Mo.1968); *Vaughan v. Taft Broadcasting Co.*, 708 S.W.2d 656 (Mo. banc 1986).

The Georgescus made a submissible case on the issue of causation by substantial evidence that Mariana's fall was caused by food spilled on the floor in the aisle in which she was walking and that she fell on the food spill because K Mart failed to remove the food spill, barricade it, or warn Mariana about it. Sometime prior to the Georgescus' arrival on the night of the fall, Tanya Bedell, a K Mart employee, saw popcorn underneath a rack and extending into a small aisle in infants' wear. After seeing the spill, Bedell failed to remove it and left the spot unattended. K Mart policy recommends employees clean spills themselves, if possible, and requires employees to warn customers of debris on the floor. Barricades were available for Bedell to place around the spot on the floor according to K Mart policy, but she failed to do so. She waited approximately five minutes before calling for someone to clean the area. There is evidence that Bedell did make two such calls and no one responded. After making the calls, she took a fifteen-minute break. After her break, she noticed that the food substance was still on the floor.

At trial, Joseph Aletean, a friend of the Georgescus who had accompanied them to K Mart, testified that Mariana had fallen where he had seen a spot of debris on the floor ten to fifteen minutes before her fall. Denisa Aletean, Joseph's daughter, testified that debris was on the floor exactly where Mariana fell, along with a mark on the floor. Traian also testified that there was debris on the floor exactly where his

wife fell and that Craig Raab, then assistant manager of the store, told him Mariana fell on potato chips. Another K Mart employee testified that he saw a potato chip on the floor after the fall. Mariana testified she slipped on something on the floor and heard Raab identify the substance as potato chips. A stock boy fell in the same spot in which Mariana fell; Mr. Aletean observed that the stock boy fell for the same reason as did Mariana.

The Georgescus' evidence is sufficient to constitute a submissible case on the issue of causation. In *Roberts v. Menorah Medical Center*, 777 S.W.2d 330 (Mo.App. 1989), plaintiff slipped and fell in a hospital hallway. She did not see anything on the floor prior to her fall. She described the fall by saying that her foot started "aeroplaning"; after the fall, she felt water on the floor. Several witnesses testified that there was water on the floor where she fell, but no one had seen her fall. Testimony varied as to the amount of water on the floor. Defendant asserted there was no substantial evidence that the condition of the water on the floor caused plaintiff to fall. The court stated defendant based its contention "upon the fact that [plaintiff] did not testify using the magic words that her feet were on a water covered surface at the time of the fall." *Id.* at 333. The judgment for plaintiff was affirmed. *Id.* In *Douglas v. Douglas*, 255 S.W.2d 756 (Mo.1953), plaintiff testified that she saw nothing on the floor as she approached the spot where she fell in defendant's place of business. After she took a few steps, her left foot "slipped on something" and she fell. *Id.* at 757. After the fall, she noticed a dark mark on the floor, there appeared to be a film on the floor, and she felt something sticky there. She testified she did not know what caused the mark on the floor made by her shoe and she did not know what was on the floor. The Court held plaintiff's evidence was sufficient to make a submissible case on the issue of causation, noting that plaintiff's inability to state exactly what substance on the floor caused her fall did not destroy the probative force of her other testimony which the jury could reasonably find to be sufficient.

*Id.* at 758. In *Van Brock v. First National Bank in St. Louis,* 349 Mo. 425, 161 S.W.2d 258 (Mo.1942), this Court affirmed a judgment for a plaintiff in a slip and fall case where the only evidence was that she slipped on a slick substance and that after the fall she had a substance on her pants that looked like washing powder. This Court held that from this evidence the jury could infer that detergent had been left on the floor from the previous night's cleaning. *Van Brock,* 349 Mo. at 433, 161 S.W.2d at 261. *See also Scheele,* 427 S.W.2d 361. (Plaintiff made a submissible case on the issue of whether her injuries resulted from being hit by a bread truck, although she did not see what knocked her down and no eyewitness saw the truck strike her.)

K Mart's citation of *Smith v. Seven–Eleven, Inc.,* 430 S.W.2d 764 (Mo.App. 1968), is not persuasive. Plaintiff in *Smith* contended she tripped on a hole in a rubber mat in a store. She did not know what caused the fall and no one found the hole in the mat until the day after the accident, during which time the store was open to considerable traffic. The *Smith* holding was based on a lack of proof that the claimed defect in the mat existed at the time of the injury. *Id.* at 769–70. In contrast, Georgescus presented substantial evidence that debris was seen in the aisle where Mariana fell both before and after her fall. No time lapse as in *Smith* was present in this case. Causation is dependent upon the facts of each case. *Metzger v. Schermesser,* 687 S.W.2d 671, 673 (Mo.App. 1985).

## II.

K Mart argues that if the Court finds a submissible case on the issue of causation, there was insufficient evidence on the issue of knowledge. K Mart asserts there was no evidence of a substance on the floor a sufficient time for the store to know about it or to barricade, remove, or warn of it.

The facts viewed in a light most favorable to the verdict show that Mariana fell on a food substance of which K Mart had actual knowledge for over 35 minutes. Employee Tanya Bedell saw the spill and waited five to ten minutes to request cleanup. When no one responded, she waited another five to ten minutes before making a second call for an employee to remove the spill. After making that call, Bedell took a fifteen minute break; when she returned, the debris remained on the floor. Bedell asked a stock boy to clean the spill. Five minutes later, Mariana Georgescu asked Bedell a question. The fall occurred five minutes after Mariana's request for assistance. Six witnesses testified that the substance on the floor where Mariana fell was food. Some said it was potato chips; others said it was potato salad or baby food; Tanya Bedell saw popcorn. Mariana was not carrying any of the named food items. The jury could infer that the food cleaned up following the fall was the food employee Bedell reported because there was only one spill in the department where the fall occurred. The spot that Joseph Aletean noted was the same food debris that Bedell had seen and thrice reported prior to the fall. The assistant manager's investigation revealed no other spots of food or other debris in the area. Witnesses recall only one spot of debris on the floor other than a jar that Mariana dropped when she fell. Bedell testified to only one food spill existing in the area after the fall—the food substance she had seen and reported earlier. The stock boy testified that he cleaned up a spill in the exact location of the substance that Bedell recalled on the floor.

In *Zachary v. Kroger, Inc.,* 332 S.W.2d 471 (Mo.App.1960), plaintiff asserted she fell on a green liquid in defendant's store. Also on the floor was a cardboard box and some broken glass; the box and the glass were next to the end of a counter. There was no broken glass in the liquid itself; the floor was clean except for that spot. Plaintiff lay on the floor for two to five minutes; after she arose a store employee arrived to remove the spill. Defendants argued there was no evidence of notice. The court found the jury could infer from the positioning of the glass and the box that an employee had already seen the spill and

had swept the debris up to the end of the counter and then gone to the storeroom to obtain a mop. *Id.* at 473. In *Sheil v. T.G. & Y. Stores Co.*, 781 S.W.2d 778 (Mo. banc 1989), plaintiff fell on a box that was in the aisle of a store. There was no evidence how long the item remained on the floor; there was a probability that a customer had placed the box in the aisle. Nevertheless this Court held that the plaintiff made a submissible case on the issue of notice. *Id.* at 781. This Court stated: "The box in the aisle was a dangerous, foreseeable condition, and the store had the duty to use due care to protect customers against dangers of this kind. The jury could find from the evidence that the defendant had breached this duty." *Id.* Mariana Georgescu made a submissible case under *Sheil* by providing direct evidence that the fall-causing substance was allowed to remain on the floor for as long as half an hour. In *Moss v. National Super Markets, Inc.*, 781 S.W.2d 784 (Mo. banc 1989), plaintiff fell in a parking lot when she slipped in a green liquid on the pavement. She presented no evidence establishing the length of time that the substance had remained on the parking lot, except that she observed footprints and tracks in the green material. This Court, in remanding the case so that additional evidence could be heard, did not require plaintiff to present evidence to show how long the liquid remained on the lot. *Moss* stated that under *Sheil*, the durations of the existence of fall-causing substances "may not be so important as they once were, especially if the evidence shows that employees of the store were regularly in the area in which the accident occurred." 781 S.W.2d at 785–86.

K Mart argues that although *Sheil* lessened the quantity and quality of evidence necessary to sustain a plaintiff's burden of proof in a slip and fall case, plaintiff still has the burden of proof on the issue of negligence and still must present sufficient evidence to submit the issue to the jury. At this point, it is sufficient to say that the evidence, as demonstrated, satisfied plaintiffs' burden with respect to notice, knowledge, and causation.

The judgment is affirmed.

ROBERTSON, C.J., RENDLEN, COVINGTON and BLACKMAR, JJ., and REINHARD and CRANE, Special Judges, concur.

HOLSTEIN, J., not sitting.