JEFFREY W. BATES, J.
This appeal arises from a premises liability case brought by Glenda Potter (Plaintiff), a business invitee, against Hy-Vee, Inc. (Defendant) to recover damages resulting from injuries Plaintiff sustained from a fall in a Hy-Vee store. Plaintiff appeals from a judgment entered for Defendant after the jury found in its favor. Plaintiff presents three points. In Point 1, Plaintiff contends the trial court erred by submitting a verdict-director based on MAI 22.03 because that pattern instruction did not accurately instruct the jury on the substantive law. In Point 2, Plaintiff contends the trial court erred by admitting testimony from Defendant's orthopedic expert that Plaintiff fell because her knee buckled. In Point 3, Plaintiff contends the trial court erred by admitting testimony from two other experts for Defendant about the results of an experiment measuring the slip-resistance of Defendant's floor. Finding no merit in any of these contentions, we affirm the trial court's judgment.
Background
In February 2014, Plaintiff visited the Hy-Vee store in Springfield, Missouri, to eat lunch. This store was a typical "self-service" business, at which customers walked up and down the aisles with shopping carts and selected products to purchase. Plaintiff was there midday on a weekend, and the store was "[v]ery busy." Plaintiff was 75 years old at the time, and she had severe osteoarthritis in her right knee. While she was walking past the cash registers on her way out of the store, Plaintiff's right leg folded, and she fell. Prior to falling, Plaintiff did not see anything on the floor, such as water or debris. While on the floor, however, she saw a "clear streak of fluid" with pink flower petals in it. After Plaintiff was helped over to a bench, an employee inspected the area and saw nothing on the floor. The fall had been captured by video surveillance. As a result of the fall, Plaintiff suffered bone bruises and a lower-back strain.
Plaintiff filed a personal injury action against Defendant in July 2015. Her amended petition alleged, inter alia , that she was injured because she "slipped and fell in a puddle of liquid on the floor of Defendant's store[.]" A three-day jury trial was held in June 2017. The jury assessed zero fault to each party and returned a verdict in favor of Defendant. The trial court entered judgment for Defendant, and this appeal followed. Additional facts necessary to the disposition of the case will be included below as we address Plaintiff's three points on appeal.
*602 Point 1
Plaintiff's first point involves alleged instructional error and arises from the following facts. MAI 22.03 is the pattern verdict-directing instruction that applies to: "Owners and Occupiers of Land" when an "Invitee [is] Injured." Id . Insofar as relevant here, it states:
22.03 [1995 Revision] Invitee Injured
Your verdict must be for plaintiff if you believe:
First, there was (here describe substance on floor that caused the fall) on the floor of defendant's store and as a result the floor was not reasonably safe, and
Second, defendant knew or by using ordinary care could have known of this condition, and
Third, defendant failed to use ordinary care to [remove it] [barricade it] [warn of it], and
Fourth, as a direct result of such failure, plaintiff sustained damage.
Id . (footnotes and affirmative defense tail omitted). At the instruction conference, Plaintiff's counsel argued that he should be permitted to submit a verdict-director that deviated from MAI 22.03 because "Plaintiff is an invitee of self-service store; therefore, ... Plaintiff is not required to prove [Defendant] knew or could have known of the dangerous condition." As the basis for that argument, Plaintiff's counsel primarily relied upon Sheil v. T.G. & Y. Stores Co. , 781 S.W.2d 778 (Mo. banc 1989). Counsel asked the trial court to modify the verdict-director to "either remove the second paragraph totally of the notice requirement or have us prove that the presence of a liquid on the floor in Defendant's store is the risk inherent in the operation of Defendant's store." Counsel tendered two instructions, A-1 and A-2, which contained those alternative modifications. Defendant's counsel argued that each modification was improper because "under Missouri law you still must prove the defendant knew or by ordinary care could have known of the condition." The trial court refused Instructions A-1 and A-2, and gave the following instruction based upon MAI 22.03:
INSTRUCTION NO. 6
In your verdict you must assess a percentage of fault to defendant Hy-Vee, Inc., whether or not plaintiff Glenda Potter was partly at fault, if you believe:
First, there was liquid on the floor of defendant's store and as a result the floor was not reasonably safe; and
Second, defendant knew or by using ordinary care could have known of this condition; and,
Third, defendant failed to use ordinary care to: remove it; or barricade it; or warn of it; and
Fourth, such failure directly caused or directly contributed to cause damage to plaintiff.
The phrase "ordinary care" as used in this instruction means that degree of care that an ordinarily careful person would use under the same or similar circumstances.
In Point 1, Plaintiff contends the trial court erred by submitting Instruction No. 6 because that verdict-director, based on MAI 22.03, did not accurately instruct the jury on the substantive law. Plaintiff argues that the second paragraph of Instruction No. 6 should have been modified, like tendered instructions A-1 or A-2, because Defendant "was charged with actual knowledge of the dangerous condition, in that there was substantial evidence that [Defendant] was a self-service store." We find no merit in this argument.
Whether the jury was properly instructed is a question of law which this *603 Court reviews de novo. Chavez v. Cedar Fair, LP , 450 S.W.3d 291, 294 (Mo. banc 2014) ; Coomer v. Kansas City Royals Baseball Corp. , 437 S.W.3d 184, 191 (Mo. banc 2014). We will not reverse a judgment based upon instructional error unless it materially affected the merits of the action. Coomer , 437 S.W.3d at 191. The party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction. Id .
"Whenever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall be given to the exclusion of any other instructions on the same subject." Rule 70.02(b); see also Hervey v. Missouri Dep't of Corr. , 379 S.W.3d 156, 159 (Mo. banc 2012) ; Karnes v. Ray , 809 S.W.2d 738, 740 (Mo. App. 1991) (if an MAI is applicable to a particular case, its use is mandatory). Rule 70.02 further provides that departure from an applicable MAI constitutes error, its prejudicial effect to be judicially determined. Rule 70.02(c); Hervey , 379 S.W.3d at 159.
Because Plaintiff's argument is based on Sheil v. T.G. & Y. Stores Co. , 781 S.W.2d 778 (Mo. banc 1989), we begin our analysis by reviewing that opinion. Plaintiff Sheil was a customer in the defendant's self-service store. He was injured when he tripped over a small, heavy box on the floor of the store's aisle. At trial, there was no evidence concerning what was in the box, who left the box there, or how long it had been in the aisle. The jury found in favor of Sheil, and T.G. & Y. appealed. Id . at 779-80. One issue on appeal was whether Sheil had made a submissible case on the issue of notice. T.G. & Y. contended the case should not have been submitted to the jury because Sheil did not present substantial evidence that: (1) an employee placed the box in the aisle (i.e. , providing actual notice to T.G. & Y.); or (2) the box had been there long enough that T.G. & Y. should have been aware of it (i.e. , providing constructive notice to T.G. & Y.). Id . Our Supreme Court rejected that argument. In doing so, it changed Missouri law by expanding the type of evidence that could be used to make a submissible case on the issue of notice:
Past cases have placed great emphasis on the length of time the dangerous item has been in the area in which the injury occurs. These cases culminate in holdings that a showing that the item was on the floor for as much as 20 minutes is insufficient to charge the storekeeper with constructive notice. By our holding, the precise time will not be so important a factor. More important will be the method of merchandising and the nature of the article causing the injury.
Id . at 780 (citations and footnote omitted). Thus, the defendant store's motion for judgment notwithstanding the verdict was properly overruled because "the jury could have found that the plaintiff was injured by a hazard that could have been expected in the store by reason of its method of merchandizing[.]" Id . at 782.
Plaintiff reads Sheil to mean that: (1) as a self-service store, Defendant was charged as a matter of law with actual knowledge that there was liquid on Defendant's floor; and (2) the inclusion of the second paragraph of Instruction No. 6, which required the jury to find that Defendant "knew or by using ordinary care could have known of this condition[,]" was improper and prejudicial. We disagree.
To make a submissible case, Plaintiff had to present substantial evidence to establish each element of her claim. See Payne v. Cunningham , 549 S.W.3d 43, 47 (Mo. App. 2018) ;
*604 Saunders v. Baska , 397 S.W.3d 44, 48 (Mo. App. 2013). Doing so, however, only satisfied the first step in meeting Plaintiff's burden of proof. The second step of that process was to persuade the jury to find those ultimate facts in her favor. See Hurricane Deck Holding Co. v. Spanburg Investments, LLC , 548 S.W.3d 390, 395 (Mo. App. 2018). As we explained in Black River Elec. Coop. v. People's Cmty. State Bank , 466 S.W.3d 638 (Mo. App. 2015) :
Credible, believable, even uncontradicted proof of evidentiary facts may not prove a contested issue of ultimate fact to the fact-finder's satisfaction. A party with the burden of proof cannot merely offer a submissible case; it must convince the fact-finder to view the facts favorably to that party. This is because evidence never proves any element until the fact-finder says it does.
Id . at 640 (emphasis in original; internal citations, quotation marks and brackets omitted). Plaintiff's argument conflates her burden of production with her burden of persuasion. If we accepted Plaintiff's argument, presenting substantial evidence to support an element of a claim would, paradoxically, lead to the removal of that element from the verdict-directing instruction and, in turn, prevent the jury from passing on the credibility of that evidence. We find no support for that proposition in Sheil or the other relevant cases decided after it.
In Sheil , the issue of notice was submitted to the jury, which was persuaded by that evidence. Sheil , 781 S.W.2d at 780-81. Thus, Sheil met both components of his burden of proof.
In Georgescu v. K Mart Corp. , 813 S.W.2d 298 (Mo. banc 1991), Georgescu presented evidence that she slipped on a food spill in K Mart's self-service store. Id . at 300. The verdict-directing instruction, which was based upon MAI 22.03, included a second paragraph requiring the jury to find that "defendant knew or by using ordinary care should have known of this condition[.]" Id . at 299. The jury found in favor of Georgescu, and K Mart appealed. One issue raised by K Mart was whether plaintiff Georgescu made a submissible case on the issue of notice. Id . at 301. Our Supreme Court decided that issue in favor of Georgescu. In the analysis, the Court summarized its earlier holding in Sheil this way:
In Sheil v. T.G. & Y. Stores Co. , 781 S.W.2d 778 (Mo. banc 1989), plaintiff fell on a box that was in the aisle of a store. There was no evidence how long the item remained on the floor; there was a probability that a customer had placed the box in the aisle. Nevertheless this Court held that the plaintiff made a submissible case on the issue of notice. Id. at 781.... K Mart argues that although Sheil lessened the quantity and quality of evidence necessary to sustain a plaintiff's burden of proof in a slip and fall case, plaintiff still has the burden of proof on the issue of negligence and still must present sufficient evidence to submit the issue to the jury. At this point, it is sufficient to say that the evidence, as demonstrated, satisfied plaintiffs' burden with respect to notice, knowledge, and causation.
Georgescu , 813 S.W.2d at 302.
In Emery v. Wal-Mart Stores, Inc. , 976 S.W.2d 439 (Mo. banc 1998), Emery presented evidence that he slipped on some spilled dog food in the aisle of Wal-Mart's self-service store. Id . at 441-42. The verdict-directing instruction, which was based upon MAI 22.03, included a second paragraph requiring the jury to find that "defendant knew, or by using ordinary care, could have known of this condition[.]" Id . at 445. The jury found in favor of Emery, and Wal-Mart appealed. One issue raised by Wal-Mart was whether plaintiff Emery *605 made a submissible case on the issue of notice. Id . Our Supreme Court decided that issue in favor of Emery. The Court began its analysis by summarizing the controlling law on this issue:
In order to have made a submissible case, plaintiff had to show Wal-Mart knew or, by using ordinary care, could have known of the dangerous condition and failed to use ordinary care to remove it, barricade it, or warn of it, and plaintiff sustained damage as a direct result of such failure. See MAI 22.03 [1995 Revision].
Id . at 443-44 (italics in original). Next, the Court summarized the relevant evidence and explained why it was sufficient on the issue of notice:
As acknowledged by Wal-Mart, the role time plays in determining whether a defendant had constructive notice of a dangerous condition has been greatly diminished. Elmore v. Wal-Mart Stores, Inc. , 812 S.W.2d 178, 180 (Mo. App. 1991) ; see Sheil v. T.G. & Y. Stores Co. , 781 S.W.2d 778, 780 (Mo. banc 1989). In Sheil, the Court stated, "[T]he precise time will not be so important a factor. More important will be the method of merchandising and the nature of the article causing the injury." 781 S.W.2d at 780. Here, as in Sheil, Wal-Mart used a self-service form of merchandising where customers freely browse up and down the aisles. Merchandise was arranged in such a way so as to draw the customers' attention upward at the items on shelves, rather than at the floor. The item plaintiff slipped on was an item found in that particular aisle of the store and was an item that the store knew spilled frequently. The store took other precautions in another area of the store where spills were also frequent. The evidence showed such a spill had occurred merely twenty to thirty minutes before plaintiff slipped and fell in the same aisle. Moreover, Wawak's testimony revealed she was working in another department further down in an adjacent aisle, which afforded her a view of the aisle where plaintiff fell, giving rise to the inference the store had actual knowledge of the spill .
Id . at 444 (bold emphasis added).
Thus, Sheil , Georgescu and Emery refute Plaintiff's argument that the issue of notice is resolved as a matter of law when the defendant is a self-service store. Instead, these three cases demonstrate that the issue of whether a defendant had actual or constructive notice of a dangerous condition on its property is a question of ultimate fact that must be included in the verdict-directing instruction in a jury-tried case.[1] As the latest controlling decisions from our Supreme Court on this issue, we are constitutionally bound to follow them. MO. CONST. art. V, § 2 ; Inman v. Dominguez , 371 S.W.3d 921, 925 (Mo. App. 2012). Because Instruction No. 6 (based upon MAI 22.03) accurately stated Missouri law, the trial court was required to submit this mandatory instruction to the jury. Rule 70.02(b); Hervey , 379 S.W.3d at 159. Therefore, the trial court did not err by giving Instruction No. 6 and refusing Instructions A-1 and A-2. Plaintiff's first point is denied.
Point 2
In Plaintiff's second point, she contends the trial court erred by admitting the testimony *606 of Dr. Garth Russell, one of Defendant's expert witnesses, as to the ultimate cause of Plaintiff's fall. Plaintiff argues that Dr. Russell's opinion testimony was inadmissible because: (1) the subject was not a matter for expert testimony; (2) he was not qualified to render the testimony; and (3) the testimony was irrelevant, speculative, confusing, misleading and prejudicial.
The admissibility of expert testimony in Missouri civil cases is controlled by § 490.065. Kivland v. Columbia Orthopaedic Grp., LLP , 331 S.W.3d 299, 310-11 (Mo. banc 2011).[2] Pursuant to § 490.065, a trial court must determine whether: "(1) the expert is qualified; (2) the expert's testimony will assist the trier of fact; (3) the expert's testimony is based upon facts or data that are reasonably relied on by experts in the field; and (4) the facts or data on which the expert relies are otherwise reasonably reliable." Kivland , 331 S.W.3d at 311. This Court reviews the admission of expert testimony for abuse of discretion. Id ."Generally, expert testimony is admissible as long as the expert's competence on the subject matter is superior to that of the ordinary juror and the expert's opinion aids the jury in deciding an issue in the case." Freight House Lofts Condo Ass'n v. VSI Meter Services, Inc. , 402 S.W.3d 586, 596 (Mo. App. 2013) ; see also State ex rel. Missouri Highways & Transportation Comm'n v. Boer , 495 S.W.3d 765, 769 (Mo. App. 2016).
Plaintiff's first argument is that Dr. Russell's testimony should not have been admitted because the cause of Plaintiff's fall was not a proper subject for expert testimony. We find that argument unpersuasive because Plaintiff took the opposite position during her case-in-chief by offering testimony on that issue from her own expert, Dr. Davison. During his testimony, he gave his own expert opinion as to the cause of Plaintiff's fall. Dr. Davison derived his opinion primarily from image stills of the surveillance video, and he opined that the cause of Plaintiff's fall was a slip. Thereafter, Defendant presented testimony during its case regarding the ultimate cause of Plaintiff's fall through its own expert, Dr. Russell. Dr. Russell testified that, based on his viewing of the surveillance video and review of Plaintiff's medical records, Plaintiff fell because her knee buckled, rather than from slipping.
It is well settled that this Court will not permit a party to: (1) take a position on a matter that is directly contrary to, or inconsistent with, one previously assumed; or (2) complain on appeal about an alleged error in which he joined, acquiesced or invited by his conduct at trial. See Klineline v. Klineline , 481 S.W.3d 551, 554 (Mo. App. 2015) ; Ard v. Shannon Cty. Comm'n , 424 S.W.3d 468, 476 (Mo. App. 2014). Because Plaintiff took the position at trial that this was a proper subject for expert testimony, we will not permit her to take an inconsistent position on appeal. Moreover, "[a]n expert witness may testify that he disagrees with the scientific conclusions reached by another expert witness." State v. Link , 25 S.W.3d 136, 144 (Mo. banc 2000). Defendant was permitted to "introduce evidence to rebut that of his or her adversary, and for this purpose any competent evidence to explain, repel, counteract, or disprove the adversary's proof is admissible." Moore v. Ford Motor Co. , 332 S.W.3d 749, 768 (Mo. banc 2011) (internal quotation marks omitted). Plaintiff's first argument lacks merit.
*607 Plaintiff's second argument is that Dr. Russell was not qualified to render an expert opinion on this subject. That argument is at odds with Plaintiff's concessions in her brief that Dr. Russell is a "highly credentialed" and "impressive" orthopedic surgeon. Based upon our review of the record, it was not an abuse of discretion for the trial court to conclude that: (1) Dr. Russell was qualified to express an opinion as to the ultimate cause of Plaintiff's fall; and (2) this testimony could aid the lay jurors in deciding that issue. See § 490.065; Freight , 402 S.W.3d at 596. Dr. Russell's opinion as to the cause of Plaintiff's fall was based upon a review of the video, an examination of Plaintiff's medical records, and his general expertise as an orthopedic surgeon. He testified that Plaintiff had "severe" pre-existing conditions in her knee which tend to cause instability in the knee joint. Dr. Russell's specialized knowledge as an orthopedic surgeon could have assisted the jury in determining what factors contributed to causing Plaintiff's fall.
We reject Plaintiff's argument that Dr. Russell was unqualified because he was not trained in ambulation testing or human factors testing. An orthopedic surgeon does possess specialized knowledge about human ambulation beyond that possessed by a lay juror. "So long as the expert is qualified, any weakness in the expert's knowledge is for the jury to consider in determining what weight to give the expert." Kivland , 331 S.W.3d at 311. Any weakness in Dr. Russell's knowledge of human ambulation goes to the weight his testimony should be given and not its admissibility. Id .
This case, like many others, involved a dispute between battling experts. Courts are wary about wading into such a battle and we decline to pass upon the credibility of witnesses or second-guess whom the jury chose to believe. See Smith v. Am. Family Mut. Ins. Co. , 289 S.W.3d 675, 692 (Mo. App. 2009) ; Davolt v. Highland , 119 S.W.3d 118, 127 (Mo. App. 2003). Plaintiff's second argument lacks merit.
Plaintiff's third argument is that Dr. Russell's testimony was irrelevant, speculative, confusing, misleading and prejudicial. At trial, however, Plaintiff objected to Dr. Russell's testimony only on the grounds previously discussed (i.e. , that the ultimate cause of Plaintiff's fall was not a proper subject for expert opinion testimony, and that Dr. Russell was not qualified to render an expert opinion on the subject). To preserve an evidentiary objection for appeal, the objection must be made at the time the evidence is being introduced, and the same objection must be carried forward on appeal. Rogers v. B.G. Transit Corp. , 949 S.W.2d 151, 153 (Mo. App. 1997). The scope of the objection cannot be broadened or altered on appeal. Lester E. Cox Med. Centers v. Richards , 252 S.W.3d 236, 239 (Mo. App. 2008). "Parties are prevented from advancing an objection to evidence on appeal that is different from the one presented to the trial court." Id . Because these scattershot challenges to Dr. Russell's testimony were not made at trial, they are not preserved for review and will not be addressed.
For all of the above reasons, the trial court did not abuse its discretion in admitting Dr. Russell's expert testimony. Plaintiff's second point is denied.
Point 3
Plaintiff's third point challenges the trial court's admission of testimony by two of Defendant's expert witnesses concerning an experiment to measure the slip-resistance of Defendant's floor. Plaintiff claims that the experiment, conducted in July 2016, was not performed under conditions *608 substantially similar to those occurring at the time of the accident, rendering the expert testimony based thereon "irrelevant, speculative, confusing, misleading, prejudicial and inadmissible." According to Plaintiff, the experiment did not meet the requisite standard in two particulars: (1) the locations of the test relative to the location of the fall; and (2) the time period that lapsed between the test and the accident. We disagree.
The standard for the admission of experimental evidence was set forth in Blevins v. Cushman Motors , 551 S.W.2d 602 (Mo. banc 1977), as follows:
The law is well settled that experimental evidence is admissible when the experiment was made under conditions substantially similar in essential particulars to the conditions which prevailed at the time of the occurrence in suit, and that the conditions need not be identical. The similarities must be in those circumstances or conditions as might supposedly affect the result in question; and the degree of similarity or difference should be judged in the light of the fundamental principle that any fact should be admissible which logically tends to aid the trier in determination of the issue. In determining this question of sufficient similarity, a substantial measure of discretion must be accorded to the trial judge.
Id . at 610 (citations omitted); Porter v. Erickson Transp. Corp. , 851 S.W.2d 725, 739 (Mo. App. 1993) ; Lawson v. Schumacher & Blum Chevrolet, Inc. , 687 S.W.2d 947, 954 (Mo. App. 1985).
"[T]he proponent of experimental evidence has the burden of presenting a foundation showing that the test, in material aspects, has the requisite similarity to the conditions or occurrences at issue in the suit." Lawson , 687 S.W.2d at 954. Variances in conditions which are more detrimental to the proponent of the test than those which existed in the incident at issue will not bar admission. Id . ; Blevins , 551 S.W.2d at 609-10.
Defendant's experts laid a proper foundation by testifying that the flooring, maintenance procedures and cleaning process did not change since the time of Plaintiff's fall. The testing was conducted in four locations, two of which a store employee testified were in very close proximity to where Plaintiff fell. According to Defendant's experts, that meant there should not have been any significant or substantial deviation in the slip-resistance of the floor from the time of the incident until the time of the test. Even though there was a significant lapse of time between the fall and the experimental testing, the conditions here meet the standard of substantial similarity. Some differences in condition between the fall and the experiment are permissible because "substantial similarity is a very flexible concept depending on what conditions it is important to control." Lawson , 687 S.W.2d at 954. In the absence of significant change in the condition of the floor, the passage of time between the fall and the experiment was, alone, insufficient to negate a finding of substantial similarity. See Hawkins v. Scott's Gas of Lowry City, Inc. , 685 S.W.2d 247, 249 (Mo. App. 1985) (finding conditions to be substantially similar despite experiment taking place 2½ years after the incident).
We also note that any variances in the conditions would have been beneficial to Plaintiff. Defendant's experts testified that the passage of time would tend to make the floor more, rather than less, slippery. See Lawson , 687 S.W.2d at 954 ("[v]ariances in conditions which are more detrimental to the proponent of the test than those which existed in the original will not *609 bar admission"). Because the variances in condition tended to favor Plaintiff, rather than Defendant, the passage of time did not render inadmissible either the experiment or the expert testimony explaining it.
As the proponent of the experiment, Defendant met its foundational burden. Plaintiff's claimed violation of the rule of substantial similarity has no merit. The issues raised by Plaintiff are a matter of weight, not admissibility. It was up to the jury to assess the value of the experiment in determining whether a dangerous condition existed in Defendant's store. Thus, there was no abuse of discretion in admitting Defendant's expert testimony about the experiment. Plaintiff's third point is denied.
Finding no merit in any of Plaintiff's contentions, the trial court's judgment is affirmed.
DANIEL E. SCOTT, J. - CONCUR
WILLIAM W. FRANCIS, JR., J. - CONCUR

Other decisions from the court of appeals holding that a defendant's actual or constructive knowledge of a dangerous condition on its premises is a question of ultimate fact in a jury-tried case include: Love v. Hardee's Food Sys., Inc. , 16 S.W.3d 739, 744 (Mo. App. 2000) ; Hutson v. BOT Inv. Co. , 3 S.W.3d 878, 886 (Mo. App. 1999) ; Head v. Nat'l Super Markets, Inc. , 902 S.W.2d 305, 308 (Mo. App. 1995).

References to § 490.065 are to RSMo Cum. Supp. (2013). In this appeal, we address this version of the statute that was in effect in June 2017 when the case was tried. Effective August 28, 2017, the provisions of § 490.065 were substantially changed.